IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ROBERT DECUSATI,

    Plaintiff,

v.                                                           Civil Case No. 3:15-cv-204-JAG

REISS ENGINEERING, INC.

    Defendant.

## OPINION

Robert DeCusati, a resident of Virginia, applied for a position as CFO at Reiss Engineering, Inc. ("REI"), a Florida corporation with its principal place of business in Florida. After an interview in Florida and other contact through telephone and email, REI offered DeCusati the position. Before he began work, however, REI rescinded the offer, blaming an unsatisfactory credit check.

DeCusati filed this action against REI for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Specifically, DeCusati alleges REI did not provide DeCusati with the required FCRA notices at his Virginia residence before the rescission and that REI owes him compensation for work he undertook for the company before REI took back its offer. REI filed this motion to dismiss under 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.

Because REI lacks the necessary contacts with Virginia, the Court finds personal jurisdiction lacking. Accordingly, the Court does not examine venue and dismisses the action.

## I. FACTS

On January 13, 2015, DeCusati found an online job posting for a position as REI's CFO, and he applied for the job. In the following weeks, DeCusati traveled to Orlando, Florida, for an interview with REI; received an email offering employment that said the offer was "contingent upon the results of a background, education, and credit check"; and accepted the offer. Throughout the process, DeCusati and REI communicated over email and telephone. After accepting REI's offer, Decusati sold his company in Richmond, Virginia, and prepared to move to Florida. In early February, DeCusati went to a training seminar in Orlando, Florida. On February 16, 2015, DeCusati told REI that he had previously filed for Chapter 13 Bankruptcy. On February 20, 2015, REI revoked DeCusati's offer due to an unsatisfactory background and credit check.

## II. DISCUSSION[1]

State law dictates whether a federal court may exercise personal jurisdiction over a defendant. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). To exercise personal jurisdiction in a Virginia federal court, the Court must determine "whether the action falls within the ambit of Virginia's long-arm statute,"[2] and "whether the due process clause of

---

[1] Because REI challenges personal jurisdiction under 12(b)(2), DeCusati must establish personal jurisdiction by a preponderance of the evidence. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). When the Court rules on a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff must establish a prima facie case of personal jurisdiction based on the complaint and any supporting affidavits. *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 628 (4th Cir. 1997). The Court must construe all relevant pleading allegations in the light most favorable to the plaintiff and "draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

[2] Va. Code § 8.01-328.1(A) ("A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: (1) [t]ransacting any business in this Commonwealth; . . . [or] (3) [c]ausing tortious injury by an act or omission in this Commonwealth . . . .")

2

the Fourteenth Amendment[3] permits jurisdiction." *Lufthansa Sys. Infratec GmbH v. Wi-SKY Inflight, Inc.*, No. 3:10-cv-745, 2011 WL 862314, at *3 (E.D. Va. Mar. 9, 2011) (citing *ESAB Group v. Centricut*, 126 F.3d 617, 622 (4th Cir. 1997)). Virginia's long-arm statute allows personal jurisdiction over defendants to the extent permissible under the due process clause, *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319, 512 S.E.2d 560, 562 (1999), so "the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

The constitutional test for due process requires the defendant to have "minimum contacts" with the state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). The defendant's contacts with the forum state must be "so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just." *ESAB*, 126 F.3d at 623. "The linchpin for long-arm jurisdiction . . . is the quantity and quality of the defendant's activity in the forum state." *Stover v. O'Connell Assocs.*, 84 F.3d 132, 136 (4th Cir. 1996).

Minimum contacts can be satisfied through either general jurisdiction or specific jurisdiction. *ALS Scan*, 293 F.3d at 711–12 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). General jurisdiction exists when a defendant has "continuous and systematic" activities in the state. *Consulting Eng'rs*, 561 F.3d at 276 n.3. DeCusati does not assert general jurisdiction over REI; he only asserts specific jurisdiction. Pl.'s Opp'n at 11.

Specific jurisdiction exists when the claims "arise out of or relate to" the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)

---

[3] U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life, liberty, or property, without due process of law").

(citing *Helicopteros*, 466 U.S. at 414). Three factors guide specific jurisdiction: "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan*, 293 F.3d at 712).[4]

### A. REI Did Not Purposefully Avail Itself

To be subject to the personal jurisdiction of the Court, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Court cannot hale a defendant into its jurisdiction because of "random, fortuitous, or attenuated contacts" or some "unilateral activity of another party or a third person." *See id.* (internal quotation marks omitted) (quoting *Helicopteros*, 466 U.S. at 417). Accordingly, the analysis focuses on "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S.Ct. 1115, 1125 (2014). "The plaintiff cannot be the only link between the defendant and the forum." *Id.* at 1122. Instead, the out-of-state defendant must expressly target the forum state. *Young*, 315 F.3d at 262–63.

Courts examine many factors when reviewing whether a defendant purposefully availed itself, *see Consulting Eng'rs*, 561 F.3d at 278, but here the parties focus on two: (1) whether REI's communications with DeCusati over email and telephone establish personal jurisdiction and (2) whether REI reached into Virginia.

---

[4] Where, as here, the plaintiff fails to show how the defendant purposely availed itself of the forum state, a court need not consider the second and third prongs. *See id.*

4

### *1. REI's Internet and Telephone Communication Do Not Establish Personal Jurisdiction*

An out-of-state defendant can be subject to a state's personal jurisdiction even if it never physically entered the state. *See, e.g., Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 260–61, 377 S.E.2d 388, 391–92 (1989) (stating that Virginia could exercise personal jurisdiction over an out-of-state defendant who never entered the state). Technology, however, does not change the constitutional limits placed upon personal jurisdiction. *See ALS Scan*, 293 F.3d at 711.

Telephone calls, email and telex messages, and letters do not form a basis for personal jurisdiction. *DeSantis v. Hafner Creations*, 949 F. Supp. 419, 424 n.12 (E.D. Va. 1996). Instead, the defendant must actively reach into the state to transact business. *Compare Nan Ya*, 237 Va. at 260–61, 377 S.E.2d at 391–92 (holding that an out-of-state defendant purposefully availed itself when it purposefully targeted the Virginia plaintiff by initially contacting him over the phone) *with Consulting Eng'rs*, 561 F.3d at 281–82 (holding that, even combined with a contract's choice-of-law provision, "four brief emails, several telephone conversations about [a contract], and the exchange of the various drafts" were insufficient to show that the defendant purposefully availed itself).

DeCusati argues that the parties' telephone and Internet communication establishes personal jurisdiction, but these alone do not suffice. All of REI's contact with DeCusati occurred after he emailed REI about a job. Unlike the defendant in *Nan Ya*, REI did not initiate contact with DeCusati. Because DeCusati's initial contact drew REI into the conversation about employment, the parties' telephone and email communications do not provide the basis for personal jurisdiction over REI.

### 2. REI Did Not Reach into Virginia

#### a. REI Did Not Purposefully Avail Itself Through Its Internet Activities

The Internet does not change the basic precepts of personal jurisdiction. *See ALS Scan*, 293 F.3d at 711 ("[T]echnology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant"). Placing information on the Internet does not automatically give a court personal jurisdiction over a defendant in each state where someone accesses the information. *Young*, 315 F.3d at 263. "[S]pecific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the state] and causing injury that gives rise to a potential claim cognizable in [the state]." *ALS Scan*, 293 F.3d at 714. To be subject to the personal jurisdiction of Virginia, an out-of-state defendant must do more than place an advertisement or article on the Internet; the defendant must expressly target residents of Virginia. *See Young*, 315 F.3d at 262–64 (finding that Virginia could not exercise personal jurisdiction over a Connecticut newspaper that wrote about a warden living in Virginia because the newspaper targeted Connecticut residents).

The "sliding scale" test examines whether a defendant's Internet activity shows purposeful conduct within a forum state. *ALS Scan*, 293 F.3d at 713. The spectrum of a defendant's activity ranges from "passive" websites, where an out-of-state defendant only posts information online, to "active" websites, where an out-of-state defendant clearly aims its business at the state, shown by the "knowing and repeated transmission of computer files over the Internet." *Id.* at 713–14. To pinpointing a place on the spectrum, the test asks whether the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714.

"[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 713 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Here, REI's Internet activity outside of email communication includes only a passive website that contains information about an open position. REI did not intend to engage in any interactions with Virginia, and DeCusati does not present evidence to show that the website is anything more than an advertisement. Accordingly, REI's Internet activity does not establish personal jurisdiction.[5]

### b. DeCusati's Employment Contract Does Not Establish Personal Jurisdiction

A contract "does not automatically constitute sufficient minimum contacts to support personal jurisdiction." *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 856 (E.D. Va. 2000) (quoting *Ellicott Machine Corp., Inc., v. John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir. 1993)). Instead, the contractual relationship must have a "substantial connection" to the forum State, *id.* at 857 (citing *Chung v. Nana Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir. 1985)), and the contractual relationship should "envision[] continuing and wide-reaching contacts in the forum State." *Walden*, 134 S.Ct. at 1122. Under this analysis, the parties' prior negotiations,

---

[5] Alternatively, DeCusati suggests that this Court examine personal jurisdiction under the "effects" test, Pl.'s Opp'n at 7, but the effects test grants jurisdiction only where the defendant acts to hurt the forum and not just the plaintiff. *See, e.g., Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (finding personal jurisdiction over out-of-state defendants because the defendants "knew that the brunt of that injury would be felt by respondent in the State in which she lives and works"); *see also Young*, 315 F.3d at 263 (finding jurisdiction lacking when out-of-state defendants aimed their conduct at an out-of-state audience); *ESAB*, 126 F.3d at 625–26 (finding no jurisdiction where it would otherwise "depend on a *plaintiff's* decision about where to establish residence" instead of the defendant's choice to purposely avail itself or expressly aim its conduct at the forum state).

contemplated future consequences, the terms of the contract, and the parties' actual course of dealing inform the contract's connections to the forum state. *Burger King*, 471 U.S. at 479.

Here, DeCusati's employment contract does not establish personal jurisdiction. Although DeCusati entered into the contract in Virginia, it remains unconnected to Virginia. DeCusati fails to present evidence showing that the contract contains a forum selection clause in Virginia, that the parties considered any business interactions in Virginia, that the parties negotiated or planned future business activities in Virginia, or that REI hired DeCusati because he resided in Virginia. Accordingly, the contract does not establish personal jurisdiction in Virginia.[6]

### III. CONCLUSION

Without personal jurisdiction over REI, the issue of venue is a moot point. The Court grants the motion to dismiss under Rule 12(b)(2) and dismisses the action.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: July 30, 2015
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

---

[6] DeCusati cites two cases from the Ninth Circuit involving FCRA violations to argue that the Court should exercise personal jurisdiction over out-of-state defendants who either access or use a consumer's credit report in an unauthorized manner. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073–74 (9th Cir. 2001) (holding that an out-of-state defendant purposefully availed itself when it violated two residents' privacy by intentionally requesting an unauthorized, unknown credit report); *Smith v. Cutler*, 504 F. Supp. 2d 1162, 1167–69 (D.N.M. 2007) (finding that an out-of-state defendant purposefully availed himself by requesting an unauthorized credit report without the plaintiff's knowledge when he "had no lawful purpose for requesting, accessing, obtaining or using the Plaintiffs' credit reports"). Neither case helps DeCusati's cause. Even if Ninth Circuit decisions bound this Court, DeCusati's facts differ from both cases. DeCusati knew that REI would perform a credit check on him, and REI had a legitimate reason to check DeCusati's credit. REI did not violate DeCusati's right to privacy, which was the primary reason both courts found that the defendants purposefully availed themselves. *See Myers*, 238 F.3d at 1074; *Smith*, 504 F. Supp. 2d at 1168. Accordingly, the FCRA does not change the minimum contacts analysis or establish personal jurisdiction over REI.

8